UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JASON R. APPLEBY, <br> (Social Security No. XXX-XX-6923), <br> Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, <br> Defendant. | 4:09-cv-27-WGH-SEB |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 8, 14) and an Order of Reference entered by District Judge Sarah Evans Barker on June 12, 2009 (Docket No. 16).

**I. Statement of the Case**

Plaintiff, Jason R. Appleby, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f).  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on September 22, 2005, alleging disability since January 11, 2005. (R. 56-58). The agency denied Plaintiff's application both initially and on reconsideration. (R. 38-44). Plaintiff appeared and testified at a hearing before Administrative Law Judge D. Lyndell Pickett ("ALJ") on April 11, 2007. (R. 335-57). Plaintiff was represented by an attorney; also testifying was a vocational expert ("VE"). (R. 335). On June 12, 2007, the ALJ issued his opinion finding that Plaintiff was disabled for a closed period from January 11, 2005, to March 27, 2007 because he only had the residual functional capacity ("RFC") to perform a limited range of sedentary work for less than an eight-hour day. However, beginning on March 28, 2007, Plaintiff was no longer disabled because he retained the RFC to perform a significant number of jobs in the regional economy. (R. 14-22). The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on March 4, 2009, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Plaintiff was 29 years old at the time of the ALJ's decision and has a GED. (R. 342). His past relevant work experience included work as a steel fabricator, which is medium work. (R. 18).

**B.  Medical Evidence**

    **1.  Plaintiff's Physical Impairments**

Janet L. Streepey, M.D., saw Plaintiff on January 11, 2005.  (R. 129).  He was pulling a heavy cart at work when he felt pain in his lower back and buttocks area which radiated into his left lower extremity.  (R. 129).  Plaintiff demonstrated palpable discomfort over the left sacral iliac notch.  Plaintiff could heel/toe walk, straight leg raising was mildly decreased on the left, and lower extremity reflexes and sensation were intact.  (R. 129).  Hip motion was normal and thoracolumbar motion was normal except for forward flexion, which was mildly reduced.  (R. 129).  Plaintiff could work with a ten-pound weight restriction, no repeated back bending, sitting and standing to tolerance, and no twisting.  (R. 129).  January 11, 2005 x-rays showed normal hips.  (R. 141-42).

Steven Pahner, M.D., saw Plaintiff on January 14, 2005.  (R. 124).  Plaintiff walked with a limp, had increased pain with straight leg raise, reflexes were normal, and motion of the lower extremities was intact.  (R. 124).

Dr. Streepey stated on January 18, 2005, that Plaintiff could work with a five-pound weight restriction, no ladders, no repeated back bending, standing to tolerance, no twisting or jarring, and no squatting or kneeling.  (R. 119).

Dr. Streepey continued to see Plaintiff in January and February 2005.  (R. 100, 105, 114, 119).  Plaintiff could heel and toe walk, and straight leg raising was decreased on the left, except on February 8, 2005, when it was normal.

Thoracolumbar spine motion was reduced, and hip and leg motion was normal. Sensation and reflexes were intact. (R. 100, 105, 114, 119).

January 26, 2005 lumbar spine x-rays showed disc space narrowing at L4-5. (R. 139). A February 4, 2005 MRI of the lumbar spine revealed nucleus extrusion at L5-S1, with some nerve root compromise. (R. 138).

Jonathan Hodes, M.D., plaintiff's surgeon, examined him on February 23, 2005. (R. 254-58). Low back motion and left straight leg raising were severely reduced due to pain. (R. 257). Strength was intact, there was no atrophy, sensation was intact, and reflexes in the lower extremities were normal. (R. 257). Plaintiff could do three deep knee bends, he had an antalgic gait favoring the left leg, and he could heel, toe, and tandem walk. (R. 257).

Plaintiff underwent a L5-S1 discectomy on March 4, 2005, because of a herniated disc. (R. 144). Dr. Hodes found a large free fragment of disc with compression of the traversing S1 nerve root on the left side. (R. 144). After the surgery, Plaintiff underwent rehabilitation from March 17, 2005, to June 2005. (R. 147-206).

Dr. Hodes saw Plaintiff on March 15, 2005, and he was doing remarkably well. (R. 251). He had no numbness or tingling, and he had substantial reduction in pain. (R. 251). On April 19, 2005, Dr. Hodes again found Plaintiff was doing remarkably well after his surgery. (R. 249). He was, however, having some low back discomfort and occasional pains shooting into his left lower extremity. Straight leg raising was normal and flexion was limited. (R. 249).

Dr. Hodes saw Plaintiff on June 1, 2005, and he found Plaintiff was doing well.  (R. 247-48).  Plaintiff could bend over and reach his toes, and back motion and straight leg raising were normal.  (R. 247).  Dr. Hodes stated Plaintiff could return to work lifting up to 20 pounds with no repetitive bending or twisting.  (R. 247).

A June 23, 2005 MRI of the lumbar spine showed changes at L5-S1 with some nucleus protrusion and mild foraminal compromise, and post-surgical scar change.  (R. 261).

J. Paul Kern, M.D., examined Plaintiff on August 24, 2005.  (R. 209-12).  Plaintiff complained of low back pain that radiated into his left lower extremity.  (R. 209).  Lumbar flexion and extension were reduced, hip motion was normal, bilateral straight leg raising was normal, and there was no spasm.  (R. 209).  Sensation was intact, reflexes were reduced, and strength was normal.  (R. 209).  Dr. Kern opined that Plaintiff would be a good candidate for a work hardening program.  (R. 211).

Dr. Kern saw Plaintiff on September 26, 2005.  (R. 207-08).  Plaintiff had a very antalgic gait, decreased lumbar extension and flexion, no muscle spasm, and no neurological deficits.  (R. 207-08).  Plaintiff had reached maximal medical improvement and had a three percent whole person impairment.  (R. 207).  Dr. Kern stated Plaintiff could lift up to 25 pounds occasionally, and not do any repetitive bending, lifting, or twisting.  (R. 208).  Plaintiff was not prescribed any medications.  (R. 208).  It was noted by Dr. Kern that upon viewing surveillance

video of Plaintiff he was seen able to do all types of activities without antalgia, including bending, twisting, and walking. (R. 208).

Plaintiff underwent an independent medical exam from S. Pearson Auerbach, M.D., on November 16, 2005. (R. 222-24). Back motion was reduced, reflexes in the lower extremities were intact, strength in the left outer toes was slightly reduced, and left straight leg raising was reduced. (R. 223). Dr. Auerbach explained that he did not agree with the opinion of Dr. Kern that Plaintiff had reached maximal medical improvement. (R. 224).

In a letter dated December 15, 2005, to the Workers Compensation Board, Dr. Auerbach reported that Plaintiff had a "failed discectomy," and that he had not reached maximal medical improvement and that he needed to be seen by a spine surgeon to determine if he needed a fusion. (R. 221). Plaintiff could only do part-time sedentary work that did not require bending or lifting. (R. 221).

On March 7, 2006, Dr. Hodes examined Plaintiff, who displayed a limited lumbar range of motion, an antalgic gate that favored the left side, intact sensation in the lower extremities, and the ability to toe, heel, and tandem walk. (R. 237-40).

A March 24, 2006 lumbar myelogram and CT scan showed disc bulging or herniation at L5-S1. (R. 259). Dr. Hodes saw Plaintiff again on March 28, 2006. (R. 233-34). Plaintiff displayed decreased sensation in his left foot and limited lumbar range of motion. (R. 233). Dr. Hodes reviewed the lumbar myelogram and CT scan and opined that Plaintiff needed a left L5/S1 fusion. (R. 234).

Plaintiff underwent back surgery by Dr. Hodes again on April 27, 2006, because of recurrent left L5-S1 disc herniation. (R. 267-68). April 27, 2006 lumbar x-rays showed screws and rods in satisfactory position at L5-S1. (R. 299). May 15, 2006 lumbar x-rays revealed a satisfactory postoperative back. (R. 298). July 10, 2006 lumbar x-rays revealed satisfactory alignment with some disc space narrowing at L3-4. (R. 297). September 11, 2006 lumbar x-rays revealed a satisfactory postoperative back. (R. 296). November 2006, January 2007, and March 2007 lumbar x-rays revealed a satisfactory postoperative back at L5-S1. (R. 293-95).

Dr. Hodes saw Plaintiff on May 17, 2006. (R. 291). Dr. Hodes reported Plaintiff was "doing remarkably well," and he stated he was pleased with Plaintiff's progress. (R. 291). Plaintiff still had some soreness in his back and some numbness in his leg. Dr. Hodes recommended physical therapy and that Plaintiff remain off work until the next visit. (R. 291).

Dr. Hodes saw Plaintiff on July 12, 2006. (R. 288-90). Plaintiff was doing reasonably well with significant improvement postoperatively. (R. 288). Plaintiff had a normal gait and could stand without difficulty. (R. 290). Lumbosacral spine motion was limited in flexion and extension, spinal muscle strength and tone were normal, and bilateral straight leg raising was normal. (R. 289). There were no strength deficits or atrophy in the lower extremities, and sensation and reflexes were intact. (R. 290). Dr. Hodes stated Plaintiff could return to work with lifting up to 25 pounds and no repetitive bending or twisting. (R. 290).

Dr. Hodes saw Plaintiff on September 12, 2006. (R. 284-87). Plaintiff was doing reasonably well with significant improvement postoperatively. (R. 284). Plaintiff had a normal gait and could stand without difficulty, but he walked with a cane. (R. 286). Lumbosacral spine motion was mildly limited, spinal muscle strength and tone were normal, and bilateral straight leg raising was normal. (R. 286). There were no strength deficits or atrophy in the extremities, and sensation and reflexes were intact, except reflexes were reduced at the right ankle. (R. 286).

Dr. Hodes saw Plaintiff on November 1, 2006. (R. 280-83). Plaintiff complained of pain in his back that radiated into his left leg and urinary incontinence. (R. 280). Plaintiff had a normal gait, he could stand without difficulty, and he could heel and toe walk. (R. 282). Lumbosacral spine motion was moderately limited, spinal muscle strength and tone were normal, and bilateral straight leg raising was normal. (R. 282). There were no strength deficits or atrophy in the lower extremities, and sensation and reflexes were intact. (R. 282). Dr. Hodes stated Plaintiff could return to work with a restriction of lifting up to 25 pounds and no repetitive bending or twisting. (R. 283).

Dr. Hodes saw Plaintiff on January 9, 2007. (R. 276-79). Plaintiff complained of pain and urinary incontinence. (R. 276). Plaintiff had a normal gait, he could stand without difficulty, and he could heel and toe walk. (R. 278).

Lumbosacral spine motion was moderately limited, spinal muscle strength and tone were normal, and bilateral straight leg raising was normal. (R. 278). There were no strength deficits or atrophy in the lower extremities, and sensation and reflexes were intact. (R. 278). Dr. Hodes stated Plaintiff could return to work with lifting up to 25 pounds and no repetitive bending or twisting. (R. 278).

Dr. Hodes again saw Plaintiff on March 6, 2007. (R. 272-75). Plaintiff complained of pain and urinary incontinence. (R. 272). Plaintiff had a normal gait, he could stand without difficulty, and he could heel and toe walk. (R. 274). Lumbosacral spine motion was limited, spinal muscle strength and tone were normal, and bilateral straight leg raising was normal. (R. 274). There were no strength deficits or atrophy in the lower extremities, and sensation and reflexes were intact. (R. 274). Plaintiff reported a substantial improvement since surgery, and Dr. Hodes found Plaintiff to be clinically stable. (R. 275). Dr. Hodes stated Plaintiff could return to work with lifting up to 25 pounds and no repetitive bending or twisting. (R. 275).

Dennis Smith, M.D., saw Plaintiff on September 14, 2006, because of difficulty urinating. (R. 271). An examination revealed the possibility of prostatitis. Consequently, Dr. Smith treated Plaintiff with medications for that condition. (R. 270-71). On December 22, 2006, Dr. Smith stated Plaintiff had irritating voiding problems, possibly secondary to a neurogenic bladder, possibly related to back surgery. (R. 269).

### 2. State Agency Review

J. Lavallo, M.D., a state agency physician, reviewed Plaintiff's medical record, and in October 2005, he assessed Plaintiff's physical condition. (R. 225-32). Plaintiff could lift/carry ten pounds frequently and 20 pounds occasionally; stand/walk six hours a day, and sit six hours a day. (R. 226). He could occasionally climb, balance, stoop, kneel, crouch, and crawl. (R. 227). On January 10, 2006, W. Bastnagal, M.D., concurred. (R. 232).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, a plaintiff must establish that he or she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

In determining if an individual has a disability that continues, Social Security regulations set out a sequential eight-step test the ALJ is to perform. *See* 20 C.F.R. § 404.1594.  The ALJ must consider the following:  (1) whether the individual is engaged in substantial gainful activity; (2) whether he has an

impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (3) whether the individual has sustained medical improvement; (4) whether he improved medically in a way that affects his ability to work; (5) if he has either not improved medically or the improvement does not affect his ability to work, whether there are still exceptions that preclude a finding of disabled; (6) if he has improved medically, a determination must be made concerning whether or not the individual still has a severe impairment or combination of impairments; (7) a determination must then be made concerning whether the individual is unable to perform his past relevant work; and (8) if the individual is unable to perform past work, a determination must be made concerning the individual's ability to perform any other work existing in significant numbers in the national economy. *Id.*

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through March 31, 2010; Plaintiff also had not engaged in substantial gainful activity since the alleged onset date.  (R. 14, 17).  The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had one impairment that is classified as severe: degenerative disc disease of the lumbar spine with surgery.  (R. 17).  The ALJ concluded that this impairment did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 18).  However, the ALJ concluded that between the dates of January 11, 2005, to March 27,

2007, Plaintiff retained the RFC for only a limited range of sedentary work for less than a full workday. (R. 18). The ALJ opined that Plaintiff could not perform his past work during this time period. (R. 18). And, the ALJ opined that during this time period there were no jobs in the regional economy that Plaintiff could perform. (R. 19). The ALJ concluded by finding that Plaintiff was under a disability from January 11, 2005, to March 27, 2007. (R. 19). The ALJ determined, however, that medical improvement occurred on March 28, 2007. (R. 19). Plaintiff, as of that date, retained the RFC to perform light work with no more than occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling and no climbing of ladders, ropes, or scaffolds. (R. 20). The ALJ concluded that this medical improvement was related to Plaintiff's ability to work. (R. 21). The ALJ determined that, based on this RFC, Plaintiff was unable to perform his past work, but could perform a substantial number of jobs in the regional economy, including jobs as hand packer and office clerk. (R. 21-22). The ALJ concluded by finding that, as of March 28, 2007, Plaintiff was not under a disability. (R. 22).

## VI. Issues

Plaintiff has raised four issue. The issues are as follows:

1. Whether remand is necessary for consideration of "new evidence."

2. Whether Plaintiff's back impairment met Listing 1.04.

3. Whether the ALJ improperly relied on Exhibit 7F in asking hypothetical questions to the VE.

      4.   Whether the ALJ's decision is supported by substantial evidence.

**Issue 1:  Whether remand is necessary for consideration of "new evidence."**

Plaintiff argues that there is "new evidence" that was submitted to the Appeals Council that must be considered. A federal court may not consider new evidence in reviewing the ALJ's decision. *Rasmussen v. Astrue*, 2007 WL 3326524 at *4 (7th Cir. 2007). However, in what is referred to as a "sentence six remand," the court may remand for an ALJ to consider additional evidence if such evidence is both new and material and if there has been shown good cause for the failure to incorporate the evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005). Evidence is considered "new" if it was not available or in existence at the time of the administrative proceeding. *Schmidt*, 395 F.3d at 741-42. The evidence is "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had he considered the evidence, meaning that the evidence must be relevant to Plaintiff's condition during the relevant time period under consideration by the ALJ. *Id.* It is important to remember that, in this case, the ALJ issued his opinion on June 12, 2007. Hence, any evidence presented by Plaintiff must pertain to the time period before the ALJ's decision, and it must not have been in existence at that time in order to qualify as new evidence.

Plaintiff has submitted several pieces of medical evidence that he asserts are both new and which demonstrate that the ALJ's determination was flawed. The first portion of evidence consisted of a March 2006 lumbar myelogram; the

record of Plaintiff's back surgery and lumbar x-rays from April 27, 2006; May 2006 lumbar x-rays; January 2007 and March 2007 lumbar x-rays; May 2007 lumbar x-rays that revealed a satisfactory postoperative back; and an April 27, 2007 lumbar CT scan that showed slight abnormalities at L5-S1 and mild disc bulges at L3-4 and L4-5. (R. 300-13). All of this evidence was in existence at the time of the ALJ's decision and, therefore, does not qualify as new evidence. Second, Plaintiff has submitted: June 2007 lumbar spine x-rays that showed a satisfactory postoperative back and June 18, 2007 lumbar MRI that showed postoperative changes at L5-S1. (R. 314-16). These exams were performed after the decision of the ALJ and present a picture of Plaintiff's back obtained after the relevant time period. Therefore, they too do not meet the definition of new evidence. Third, Plaintiff has submitted a report from Dr. Hodes (who saw him on June 27, 2007) and a July 16, 2007 letter in which Dr. Hodes opined that Plaintiff had a 41% impairment of the whole person. (R. 320, 322-23, 325-28). None of this information purports to cover the relevant time period, and Plaintiff has made no attempt to demonstrate good cause for why this evidence was not obtained during the appropriate time frame.

Based on a review of all of this evidence, the court determines that none of it, either viewed individually or as a whole, warrants remand.

**Issue 2:     Whether Plaintiff's back impairment met Listing 1.04.**

Plaintiff also argues that his back impairment met Listing 1.04, which provides as follows:

> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  In order for an individual to be disabled under a particular listing, his impairment must meet each distinct element within the listing.  *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

The objective medical evidence, in this instance, reveals that, after Plaintiff's second back surgery in 2006, Plaintiff's impairment did not meet Listing 1.04.  Plaintiff has made no argument that his impairment meets Listing 1.04(C), thus the court must analyze Listing 1.04(A) and (B).  With regard to Listing 1.04(A), the objective medical evidence after Plaintiff's second back surgery reveals that Dr. Hodes treated Plaintiff after his surgery from May 2006

to June 2007.  Dr. Hodes routinely found no evidence of motor loss, sensory loss, or reflex loss.  Additionally, he routinely found normal straight leg raising tests.  There is no objective medical evidence in the record from this time period that contradicts the findings of Dr. Hodes.  As for Listing 1.04(B), there simply are no records from any source during the relevant time period before the ALJ's decision that suggested that Plaintiff suffered from spinal arachnoiditis.  There is one note from December 2006 from Dr. Smith that indicated that Plaintiff possibly had bladder problems that were possibly related to back surgery.  (R. 269).  However, based on this one assessment, the ALJ was certainly not obligated to find that Plaintiff had spinal arachnoiditis.  Thus, the ALJ's decision finding that Plaintiff did not meet Listing 1.04 is supported by substantial evidence.

**Issue 3:    Whether the ALJ improperly relied on Exhibit 7F in asking hypothetical questions to the VE.**

Next Plaintiff argues that the ALJ committed error when he asked the VE hypothetical questions that incorporated limitations that the state agency physicians had provided in October 2005.  (R. 225-32).  Plaintiff is correct that this RFC assessment was provided *before* his second surgery.  However, the limitations included the following:  (1) no lifting/carrying more than ten pounds frequently and 20 pounds occasionally; (2) standing/walking six hours a day, and sitting six hours a day; and he could only occasionally climb, balance, stoop, kneel, crouch, and crawl.  (R. 226-27).  That limitation is consistent with

the limitations provided by Plaintiff's surgeon *after* the second surgery.  In fact, Dr. Hodes stated on several occasions after Plaintiff's second surgery, including November 2006, January 2007, and March 2007, that Plaintiff could return to work with lifting up to 25 pounds and no repetitive bending or twisting.  (R. 272-83).  This RFC assessment was actually even less restrictive than the assessment provided by state agency physicians at Exhibit 7F.  Therefore, the ALJ did not err in referring to Exhibit 7F when asking hypothetical questions to the VE.

**Issue 4:    Whether the ALJ's decision is supported by substantial evidence.**

Finally, Plaintiff finds fault with the ALJ's determination that Plaintiff's disability ended on March 28, 2007.  Specifically, Plaintiff argues that no piece of medical evidence supports a determination that March 28 was the actual specific date that Plaintiff's disability ended.  However, the court concludes that the ALJ was actually quite generous in his determination that Plaintiff's disability did not end until March 28.  Plaintiff's own surgeon and treating physician, Dr. Hodes, opined that Plaintiff could return to work with a limitation of lifting up to 25 pounds and no repetitive bending or twisting as early as July 12, 2006.  (R. 290). Dr. Hodes issued the same restrictions several times, including March 6, 2007. (R. 275).  The ALJ properly followed the eight-step process mandated by 20 C.F.R. § 404.1594 and determined that, on March 28, 2007, Plaintiff was no longer disabled because:  (1) he had experienced medical improvement that positively affected his ability to do work activities; and (2) the medical

improvement provided him with the RFC to perform a substantial number of jobs in the regional economy. This determination was supported by Dr. Hodes' opinions, as well as the objective medical evidence.

### VII. Conclusion

Remand is not necessary for the consideration of new evidence. Additionally, Plaintiff's impairment does not meet Listing 1.04. The ALJ also asked proper hypothetical questions to the VE that provided an accurate assessment of Plaintiff's RFC. Finally, the ALJ's determination that Plaintiff's impairment improved as of March 28, 2007, is supported by substantial evidence. The decision of the Commissioner is, therefore, **AFFIRMED**.

**SO ORDERED** the 8th day of January, 2010.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Paul A. Brizendine
BRIZENDINE LAW OFFICE, LLC
paul@brizendinelaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov